UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**DANNY LEE GREEN**                  **CIVIL ACTION NO. 2:13-CV-812**
    **FED. REG. NO. 10822-064**             **SECTION P**

**VERSUS**                              **JUDGE MINALDI**

**WARDEN C. MAIORANA**              **MAGISTRATE JUDGE KAY**

## REPORT AND RECOMMENDATION

Before the court is the petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241 by *pro se* petitioner Danny Lee Green ("Green"). Green is in the custody of the Federal Bureau of Prisons ("BOP") and is incarcerated at the Federal Correctional Institute in Oakdale, Louisiana ("FCIO"). However, he complains about events that occurred while he was incarcerated at the Federal Correctional Institute in Forest City, Arkansas ("FCIF"). Green names Warden C. Maiorana as the respondent.[1]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons,

**IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE.**

## I. BACKGROUND

In his original petition, Green claimed that he has been denied due process in connection with his appeal of a Discipline Hearing Officer ("DHO") report issued at FCIF. Green's petition

---

[1] Jurisdiction must be judged as of the time a petition is filed. *Lee v. Wetzel*, 244 F.3d 370, 375 n. 5 (5th Cir. 2001). Since petitioner was incarcerated in this district when he filed his petition, jurisdiction and venue over his § 2241 petition are proper. *See id.*; 28 U.S.C. § 2241(d).

was deficient in several respects. Thus, this court issued a memorandum order directing Green to amend his petition to provide needed information/documentation. Doc. 3. Petitioner complied with the order and filed an amended petition on December 2, 2013. Doc. 6. In his amended petition Green asserted that he was deprived of his due process rights to adequate notice. He claimed he was found guilty of a different code violation than was set forth in the original incident report. Doc. 4, p. 3.

The incident report in question states that on November 27, 2011, petitioner and another inmate were seen leaving prison grounds. Doc. 4, att. 1, p. 5. Shortly thereafter the inmates turned around to return to the institution property. *Id.* At that point, an officer ordered them to get on the ground and both inmates complied. *Id.*

Green was given a copy of the incident report on September 28, 2011. *Id.* On October 3, 2011, he was provided a copy of a form entitled "Inmate Rights at Discipline Hearing" and a "Notice of Discipline Hearing Before the DHO." Doc. 4, att. 1, p. 6-7. The Notice listed the alleged offense as a violation of code number 200 which was described as "escape from a non-secure institution within a four hour period." *Id.* at p. 6.

The DHO hearing was held on October 13, 2011. Doc. 4, att. 1, pp. 2-4. (the "DHO Report"). The DHO Report noted under a section entitled "Finding of the DHO" that the code violation was changed to "code 299 most like 200A, conduct which disrupts most like escape." *Id*. at 3. Petitioner was found guilty of the Code 299 violation and received the following sanctions: (1) disciplinary segregation for 30 days; (2) loss of 27 days of good time credit; and (3) loss of 180 days of commissary/visits. *Id*. at 3-4.

Green received a copy of the DHO Report on December 30, 2011. Doc. 1, p. 6. The report advised him that he had 20 days to appeal the DHO's findings. Doc. 4, att. 1, p. 4. Green

contends that he timely completed an administrative remedy BP-10 on January 2, 2012, and gave it to a detention officer to mail. Doc. 1, p. 6. Green contends that after 12 days without getting confirmation that his appeal was accepted he asked FCIF staff about the status of his appeal but did not get a response. *Id.*

Green was transferred from FCIF to FCIO in mid-February 2012. He states that he did not take his legal documents with him. *Id.* He later received the documents but claims that his copy of the BP-10 was missing. At Green's request, FCIO counselors made efforts to locate his missing property but only found a copy of the DHO Report. *Id*. at 7.

Green contends that Ms. Deville, FCIO case coordinator, told him to re-file the BP-10 with the regional office. *Id.* He did as instructed. *Id.* The appeal was received by the regional office on November 23, 2012, but denied as untimely. Doc. 1, att. 2, p. 4. The denial noted that Green failed to attach valid staff documentation (on BOP letterhead) justifying the delay. *Id.*

Green then filed an appeal with the central office. Doc. 1, att. 2, p. 3. The central office denied the appeal, noting that Green submitted the request to the wrong level. *Id.* The central office also noted that Green failed to attach a staff memo on BOP letterhead explaining the untimely filing of the BP-10. *Id.* Green contends that the FCIO unit team refused to issue the needed memo. Doc. 1, p. 7.

In sum, Green claims that he was deprived of good time credit without proper notice and that his administrative appeal was wrongly denied as untimely despite the fact that he timely completed and submitted the BP-10 form for mailing.

As relief petitioner seeks restoration of the 27 days of good time credit; expungement of the charge from his record; restoration of his custody classification score to the pre-incident report level; and, restoration of his out custody classification. Doc. 4, p. 2.

## II. LAW AND ANALYSIS

Green seeks *habeas corpus* relief pursuant to 28 U.S.C. § 2241, which provides that "the writ of habeas corpus shall not extend to a prisoner unless … [h]e is in custody in violation of the Constitution or laws or treaties of the United States … ." 28 U.S.C. § 2241(c)(3).

### A. *Good Time Credit*

Federal prisoners have liberty interests in their accumulated good time credit. Therefore, revocation of such credit must comply with minimal procedural requirements. *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir.2000). Those minimal procedural requirements are (1) adequate notice of the alleged violation; (2) an opportunity to present evidence; and (3) written findings in support of the ruling. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

Federal courts will not review a disciplinary hearing officer's factual findings *de novo;* instead, the courts will only consider whether the decision is supported by "some facts" or by "a modicum of evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454-455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). "Prison disciplinary proceedings are overturned only where no evidence in the record supports the decision." *Broussard v. Johnson,* 253 F.3d 874, 877 (5th Cir. 2001). "Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer." *Hudson v. Johnson,* 242 F.3d 534, 537 (5th Cir.2001). The information provided in a written incident report standing alone can satisfy the "some evidence" standard. *Id*. at 536–37.

In this case, the record reflects that the minimal procedural requirements for the hearing were met. Further, the report issued by the disciplinary hearing officer noted that he considered the written statement of the officer that witnessed the incident, Green's statements to the investigating officer, and photographs before making his determination that Green committed the

prohibited act. Doc. 4, att. 1, p. 2-3. The evidence that the disciplinary hearing officer relied upon certainly meets the "some evidence" standard and supports a finding of guilt.

Thus, Green has failed to show that a constitutional violation occurred and his claims should be denied.

### B. *Notice*

Green further maintains that he is entitled to relief because the prison staff failed to provide him with adequate notice of the Code 299 violation.

The record in this matter does not support a finding of lack of adequate notice. In fact, the undisputed facts establish that petitioner received the original incident report weeks prior to the DHO hearing. Thus, he had more than adequate notice of the initial charge of actual escape and that the hearing would concern the incident of September 27, 2011. That he was ultimately found guilty of a seemingly less serious prohibited act involving the incident does not diminish the fact that he had ample time to prepare for the hearing. It is clear that petitioner received all of the due process to which he was entitled. Thus, his claim in this regard is without merit.

### C. *Administrative Appeal*

Green's claims regarding alleged errors made during the administrative appeal process also lack merit.

Federal *habeas corpus* review is available only for the vindication of rights existing under federal law, not rights existing solely under the rules of state procedure or, as applicable in this case, administrative procedure. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir.1996) (prison's failure to follow its own administrative rules and regulations does not raise federal constitutional issues as long as minimum constitutional requirements are met); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir.1986) (failure of prison officials to follow

their own rules does not establish a constitutional violation). Simply put, petitioner does not have a constitutional right to an administrative appeal and claims arising therefrom do not give rise to a constitutional violation as long as minimal procedural requirements have been met. *See Jackson v. Cain*, 864 F.2d 1235, 1251 (5th Cir.1989) (failure to follow procedural regulations "does not establish a violation of due process, because 'constitutional minima may nevertheless have been met'"). As noted above the due process requirements were met.

### III. CONCLUSION

For the foregoing reasons,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus should be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), a party aggrieved by this report and recommendation has 14 days from its service to file specific, written objections with the clerk of court. A party may respond to another party's objections within 14 days after being served with a copy thereof.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within 14 days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415 (5th Cir.1996).

THUS DONE this 21st day of July, 2014.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE